**Yuri Simpson, (SBN 183737)**
**Law Office of Yuri Simpson**
**PO Box 16232**
**San Diego, CA 92176**
**619-762-1118**
**yuri@simpsontcpalaw.com**
*Attorney for Plaintiff*
*and the Putative Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE CHARMAN, individual and **on behalf of all others similarly situated**<br><br>Plaintiff,<br><br>v.<br><br>**California Coast Escrow, Inc.,**<br><br>Defendants, | Civil Case No.: **'23CV0932 H    KSC**<br><br>**CLASS ACTION COMPLAINT**<br><br>VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]<br><br>JURY TRIAL DEMANDED |

COMPLAINT    1    Case #: _____

# PLAINTIFF'S ORIGINAL COMPLAINT

## NATURE OF THE CASE

1. Plaintiff brings this Class Action Complaint individually and on behalf of all others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of California Coast Escrow, Inc. in negligently, knowingly and willfully contacting Plaintiff and others similarly situated on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq*. ("TCPA") and related regulations, thereby invading Plaintiff's privacy.

## PARTIES

2. The Plaintiff is THANE CHARMAN ("Plaintiff") a natural person, resident of the Southern District of California, and was present in California for all automated text messages, in this case in San Diego County, California. Plaintiff is a "person" pursuant to U.S.C. § 153 (39)

3. Defendant, California Coast Escrow, Inc. ("Defendant") is an incorporated company organized and existing under the laws of the State of California, with a principal address 1645 S. Rancho Santa Fe Road, Suite 101 San Marcos, CA 92078.

4. Plaintiff is informed and believes that Defendant is a "person" pursuant to U.S.C. § 153 (39)

5. Defendant can be served care of Summer Hayes, 1645 S. Rancho Santa Fe

Road, Suite 101 San Marcos, CA 92078.

## JURISDICTION AND VENUE

6. **Subject Matter Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7. **Personal Jurisdiction**. This Court has Personal Jurisdiction as Plaintiff resides in this district and the Defendant voluntarily entered and conducted business in this District.

8. **Venue**. The venue is properly located in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the automated text messages for the sale of goods and services directed at California residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Southern District of California when he received a substantial if not every single automated text message from Defendant that are the subject matter of this lawsuit.

## CLASS ALLEGATIONS

9. Class Definition: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and the class defined as follows:

**Class**. All persons who: (1) from the last 4 years to present (2) whose cellular phones were sent text messages (3) to promote Defendants' products or services;

10. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

11. Numerosity: The exact number of members of the Class is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class may be identified through Defendants' records.

12. Typicality: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and members of the Class sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text messages.

13. Adequate Representation: Plaintiff will fairly and adequately represent and

protect the interests of the other members of the Class. Plaintiff's claims are asserted in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

14. Policies Generally Applicable to the Class: This class action is appropriate for certification because Defendants have acted or refused to act on grounds applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

15. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

        a.      What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

        b.      Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to Class Members;;

        c.      Whether Defendant's conduct violated the TCPA;

        d.      Whether Defendant should be enjoined from engaging in such conduct in the future; and,

        e.      The availability of statutory penalties.

16. Superiority: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class are likely be relatively small and impossible to recover, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

17. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

19. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal

Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

20. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

21. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

22. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

23. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

24. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

25. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

26. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

28. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

29. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (Internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY**

30. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

31. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

32. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

33. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

34. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

35. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

36. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

37. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## **FACTUAL ALLEGATIONS**

38. At all times material hereto Plaintiff's number 619-3X0-X1X9 was

successfully registered on the Do-Not-Call Registry in May 2018.

39. On or about June 10, 2019, at approximately 4:50 PM, Defendant sent an automated text message to Plaintiff Charman's cellular telephone number from the telephone number 797979.

40. The link embedded in the text message (https://tapit.us/m31rc), which has since been deactivated, redirected the recipient to a Vimeo video featuring Defendant's employee Spencer Tuckett advertising training events for real estate sales.

41. Plaintiff did not give Defendant prior express written consent to send text messages to his cellular telephone numbers by using an automatic telephone dialing system.

42. The message was sent from a specific SMS short code.

43. The language in the messages was automatically generated and inputted into pre-written text templates without any actual human intervention in the drafting or sending of the messages; the same exact messages were sent to thousands of other consumers.

44. The telephone system Defendant used to send the message constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

45. Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—the advertisement and marketing text messages at issue were sent

by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

46. Upon information and belief, no human directed any single text message to Plaintiff's cellular telephone number.

47. Defendant did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on his cellular telephones.

48. Defendant does not have any prior existing business relationship with Plaintiff. Plaintiff has never been a customer or client of Defendant.

49. Receipt of Defendant's unauthorized messages drained Plaintiff's phone batteries and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

50. Defendant did not place the text message for an emergency purpose.

51. Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

52. Defendant does not have any prior existing business relationship with Plaintiff. Plaintiff has never been a customer or client of Defendant.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

53. Defendant's automated text messages harmed Plaintiff and the Class by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

54. Defendant's automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

55. Defendant's automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

56. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## COUNT ONE:

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing without Prior Express Written Consent**

57. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

58. Defendant and/or their agents placed automated text messages to Plaintiff's cellular telephone and the cellular phones of the other members of the Class using an ATDS system.

59. Defendant placed these text messages *en masse* without the consent of

Plaintiff and the other members of the Class.

60. Defendant's automated text messages were made for the purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

61. As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiff and the Class, causing Plaintiffs to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff and each member of the Class to recover $500 in statutory damages for each violation and an injunction requiring Defendant1 to stop their unlawful text message campaigns.

62. Not only did Defendant make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

63. If the Court finds that Defendant willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

64. Plaintiff is entitled to an award of at least $500 in damages for each such violation of 47 U.S.C. § 227(c)(5)(B).

65. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs for judgment against the defendant as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing their violative behavior, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B) in the amount of $500.00 per unlawful text message to Plaintiff and each class member;

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3)(C);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and

expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: May 19, 2023         Respectfully submitted,

By: s/ Yuri Simpson
Yuri Simpson

**Counsel for Plaintiff and Putative Class**